## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANJELICA PICKETT, TAYLOR FETT** and **MINDY CHURCH**, individually and on behalf of all other similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> **INTELENET AMERICA LLC** (d/b/a Intelenet Global Services), <br><br> Defendant. | Case No.: <br><br> **COLLECTIVE AND CLASS ACTION COMPLAINT** <br><br> **JURY DEMAND** |

Plaintiffs ANJELICA PICKETT, TAYLOR FETT, and MINDY CHURCH, individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action Complaint against Defendant INTELENET AMERICA LLC (d/b/a Intelenet Global Services), and state as follows:

### INTRODUCTION

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs ANJELICA PICKETT, TAYLOR FETT, and MINDY CHURCH ("Plaintiffs"), individually and on behalf of all similarly situated persons employed by Defendant INTELENET AMERICA LLC (d/b/a Intelenet Global Services) ("Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, among other laws.

2.     Defendant is a U.S.-based professional call answering service, providing call center services to its customers.

3.     Defendant employed Plaintiffs as non-exempt hourly call center employees (hereinafter referred to as "customer service representatives" or "CSRs"). CSRs, including

Plaintiffs, from Defendant's brick-and-mortar call centers.

4.      Upon information and belief, Defendant operates at least two brick-and-mortar call centers from campus locations in Campbellsville, Kentucky and Fort Wayne, Indiana.

5.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous; in July 2008, it issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry. (**Exhibit 1**, DOL Fact Sheet #64.)

6.      One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." (*Id.*)

7.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." (*Id.*) Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." (*Id.*)

8.      Defendant requires its hourly CSRs to work a full-time schedule, plus overtime. However, Defendant does not compensate CSRs for all work performed; instead, Defendant only pays the CSRs *after* they have loaded several essential software programs on their computers and are available to accept calls. This policy results in CSRs not being paid for all time worked, including overtime.

9.      Defendant's CSRs use multiple computer programs, software programs, and applications in the course of performing their responsibilities. These programs and applications

are an integral, indispensable, and important part of CSRs' work, as they cannot perform their jobs effectively without them.

10.     Defendant's CSRs perform the same basic job duties and are required to use the same or similar computer programs, software programs, applications, and phone systems.

11.     Defendant also required or permitted CSRs to perform off-the-clock work at the end of their shifts when they were required to shut down and log-out of the essential computer software used to perform their jobs.

12.     The individuals Plaintiffs seek to represent in this action are current and former brick-and-mortar customer service representatives who worked for Defendant and are similarly situated to each other in terms of their common experience of Defendant's violations of federal and state law.

13.     Defendant knew or could have easily determined how long it takes the CSRs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for this work, but did not.

14.     In addition, Plaintiffs and other CSRs were victims of Defendant's common policy of failing to incorporate their "Incentive" and shift differential pay into their regular rates of pay, for purposes of calculating their hourly overtime rates. As a result, there were many weeks throughout the statutory period in which Plaintiff and other CSRs received an hourly rate for overtime hours of less than "one and one-half times the[ir] regular rate," in violation of the FLSA. 29 U.S.C. § 207(a)(1). See 29 U.S.C. § 207(e) ("As used in this section the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee).

15.     Plaintiffs seek a declaration that their rights, and the rights of the putative Collective

and Classes were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties, and an award of attorneys' fees and costs, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

16.     This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

17.     Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

18.     Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

19.     Defendant's annual sales exceed $500,000, and Defendant has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

20.     The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims and the federal claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

21.     The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§

2201 and 2202.

22.     The Court has personal jurisdiction over Defendant because Defendant is incorporated in Pennsylvania.

## VENUE

23.     Venue is proper in the Eastern District of Pennsylvania because Defendant resides in this District.

## PARTIES

24.     Plaintiff ANJELICA PICKETT ("Plaintiff Pickett") is an Indiana resident who worked for Defendant as a CSR in Fort Wayne, Indiana from March 2018 through October 2018. Defendant compensated Plaintiff Pickett through the payment of an hourly wage, most recently at the rate of $11.50 per hour. Plaintiff Pickett signed a consent form to join this collective action lawsuit. (*Exhibit 2*, Pickett Consent to Join.)

25.     Plaintiff TAYLOR FETT ("Plaintiff Fett") is an Indiana resident who worked for Defendant as a CSR, Team Lead and Effectiveness Coordinator in Fort Wayne, Indiana from June 2016 through November 2018. Defendant compensated Plaintiff Fett through the payment of an hourly wage, most recently at the rate of $12.50 per hour. Plaintiff Fett signed a consent form to join this collective action lawsuit. (*Exhibit 3*, Fett Consent to Join.)

26.     Plaintiff MINDY CHURCH ("Plaintiff Church") is a Kentucky resident who worked for Defendant as a CSR, Supervisor, and Trainer in Campbellsville, Kentucky from May 2016 through April 2019. Defendant compensated Plaintiff Church through the payment of an hourly wage, most recently at the rate of $12.60 per hour. Plaintiff Church signed a consent form to join this collective action lawsuit. (*Exhibit 4*, Church Consent to Join.)

27.     Defendant INTELENET AMERICA LLC is a Limited Liability Company

incorporated in Philadelphia County, Pennsylvania (Entity Number 3153230) with a Principal Office at 1001 28th Street South, Fargo, North Dakota 58103. Defendant is licensed to do business in the state of Pennsylvania, and its registered agent for service of process in Pennsylvania is the Pennsylvania Secretary of State.

28.     Upon information and belief, Defendant is a wholly owned subsidiary of Intelenet Global Services, a business process outsourcing and contact center provider firm headquartered in Mumbai, India. (*See generally* https://www.intelenetglobal.com/ (last visited on August 29, 2018).)

29.     Upon information and belief, Defendant has employed hundreds, if not thousands, of CSRs throughout the United States in the last three years.

## GENERAL ALLEGATIONS

30.     As CSRs for Defendant, Plaintiffs are responsible for, among other things, responding to inbound telephone calls from card members of Defendant's clients—such as American Express—and assisting those card members who want to redeem their reward points to book trips. Plaintiffs' responsibilities include providing travel options, booking travel, assisting with navigation of the travel website, and cancelling trips.

31.     Defendant used a number of titles to refer to CSRs, including, but not limited to: Agents and Travel Care Professionals.

32.     Upon information and belief, all CSRs were hourly, non-exempt employees.

33.     Defendant's CSRs use similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications are integral and an important part of the CSRs' work, and they cannot perform their jobs without them.

34.     Defendant's CSRs received substantially the same training, were subject to the same disciplinary policies, and were subject to quality assurance reviews based on the same or similar criteria.

35.     Defendant expressly instructed and trained CSRs to have all their computer networks, software programs, and applications opened and ready at the start of their scheduled shifts and before they changed their status to "Ready" or "Auto In" to receive incoming calls.

36.     Defendant enforced this policy through its quality assurance grading system.

37.     Defendant's Quality Assurance Team ("QAT") monitored and used a point system to grade CSRs' calls.

38.     For example, before a CSR could service a customer, they were required to verify the customer's identity by asking security questions. If the CSR failed to verify the customer's identify, they were marked down by the QAT. As a result, CSRs needed to have all of their work applications up and running to avoid a mark down.

39.     Similarly, the maximum hold time permitted by Defendant was three to four minutes per hold. If the CSR placed a customer on hold for longer than three to four minutes without checking back in with the customer, they were marked down by the QAT. This policy reinforced that CSRs were required to have all computer networks, software programs, and applications opened and ready at the time they changed their status to "Ready" or "Auto In."

40.     Defendant used the computer program "XactTime" to track CSRs' hours worked for purposes of compensation.

41.     Upon information and belief, XactTime had several paid and unpaid statuses.

42.     Defendant expressly instructed Plaintiffs and all other CSRs that they should not be in a paid state within the program XactTime unless they were prepared to field phone calls.

A.      **Pre-Shift Off-the-Clock Work**

43.     Pursuant to Defendant's policies, training, and direction, Plaintiffs and all other CSRs are required to start up and log into various secure computer programs, software programs, and applications in order to access information. The pre-shift startup and login process takes substantial time on a daily basis with said time approximating 15 minutes per shift, or even longer when technical issues arise. Before clocking in, Plaintiffs and each CSR must undertake the following essential work tasks in chronological order:

1)  CSRs must locate their workstation and turn-on/warm-up their computer.

2)  CSRs must log into their computer and Microsoft Windows according to the following regimented process:

   a.  Once the computer finishes booting up, a McAfee Endpoint Encryption box will appear. CSRs must enter their AD username in the User name box then hit Enter.

   b.  Enter McAfee Encryption password in the Password box and hit Enter.

   c.  Click on "OK" on the Windows warning message screen.

   d.  When the Windows login box comes up, click on "Switch User."

   e.  Click on the "Network Logon" icon in the lower right corner.

   f.  Windows will then load.

3)  Once they complete the Computer/Windows login steps, CSRs must launch the required software programs used for their work so that they are prepared to take calls (i.e., are "phone ready") at the start of their shift. The required steps entail the following:

   a.  CSRs must wait for Cisco IP Communicator to automatically load.

   b.  Open Firefox.

   c.  Launch and sign into ADT (software program used to verify a customer's identity and to log, book, change, modify or cancel reservations).

   d.  Launch Internet Explorer and then search for, open and sign into the LMS Learn Center and Ask webpages.

e. Sign into Spark (an inter-office communication system) and join two assigned chatrooms (one is a group chat assigned to CSRs according to their last name and the other is a group chat comprising the CSRs' team members and team leader).

f. Open softphone system (Voyager), input login numbers, but do not hit login until the next step is complete.

g. Open a new tab in Internet Explorer and login to XactTime.

h. Click on the open Voyager window, select "Login," change status to "Ready" and begin receiving calls.

44. Defendant's CSRs complete this process before clocking in each shift, meaning that they perform off-the-clock work approximating 15 minutes per shift without compensation.

45. The unpaid off-the-clock work performed prior to each shift by Plaintiffs and other CSRs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

**B.     Meal-Period Off-the-Clock Work**

46. Defendant provides Plaintiffs and the CSRs with one unpaid meal break per shift.

47. In order to deduct an unpaid meal period from an employees' compensable time, an employee must be completely relieved of his or her employment duties for the entire lunch break. 29 CFR 785.19(a) states:

> Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be _completely relieved_ from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (Emphasis added).

48. However, Defendant does not provide Plaintiffs and the CSRs with a legitimate bona fide meal period because it requires Plaintiffs and the CSRs to return to their computer

stations prior to the end of their meal periods and then to spend off-the-clock time logging back into the necessary computer/software programs and applications needed to begin taking customer calls promptly at the end of their scheduled meal periods.

49.     The work performed by Plaintiffs and Defendant's CSRs during their unpaid meal periods takes substantial time on a daily basis with said time ranging from one to ten minutes per day, or more, depending on whether they were kicked out of their computer programs while on lunch.

### C.     Other Mid-Shift Off-the-Clock Work

50.     CSRs were often required to perform additional mid-shift off-the-clock work when they experienced technical difficulties with Defendant's software programs, servers, systems or applications.

51.     Pursuant to Defendant's policies, training, and direction, CSRs are required to log out of Defendant's software programs, systems, and applications (including the timekeeping system) and inform a team leader when they experience technical difficulties. The CSR is then given a ticket number and instructed to call the help desk. The help desk will trouble shoot the technical issues with the CSR and get the CSR logged back into the system. If the help desk does not answer, the CSR must sit at his or her workstation and wait for the help desk to return the call. These activities take a substantial amount of time—generally, up to 20 minutes or more per incident.

52.     So long as it takes seven minutes or less to resolve the technical issue, CSRs are paid for this time. If, however, it takes longer than seven minutes to resolve the technical issue, Defendant maintained a common policy and practice of not paying CSRs for this time.

53.     Generally, mid-shift technical difficulties will take at least 20 or more minutes to

resolve because resolution typically requires Defendant to furnish the CSR with a new password for the ADT software program, and there is a 20-minute lag between the time that a new ADT password is requested and the time that it is received. Thus, CSRs are rarely, if ever, compensated for their time spent resolving mid-shift technical issues.

54.     Notwithstanding the fact that technical difficulties are invariably the product of Defendant's software programs, servers, systems or applications, Defendant maintains a common policy and practice pursuant to which it does not pay its CSRs for time spent resolving technical issues where such time exceeds seven minutes. This policy results in CSRs not being paid for all time worked, including overtime.

### D.     Post-Shift Off-the-Clock Work

55.     Pursuant to Defendant's policies, training and direction, Plaintiffs and all other CSRs are required to shut down and logout of certain computer programs and applications they use during their shift *after* they log-out of Defendant's timekeeping system. The post-shift logout and shutdown process takes substantial time on a daily basis with said time ranging from three to four minutes per shift, but can take as long as ten minutes if the CSR experiences technical problems with the computer/software/applications.

56.     Pursuant to Defendant's policies, training and direction, Plaintiffs and the CSRs are not allowed to begin the shutdown and log-out process until after their shifts end and after they clock out of Defendant's timekeeping system. In this regard, Defendant requires Plaintiffs and the CSRs to clock out of the timekeeping system right at the end of their scheduled shifts, as opposed to when they finish performing all work activities and tasks.

57.     In fact, if a CSR ignores Defendant's directive and clocks out of the timekeeping system *after* completing the shut down and logout process, Defendant will adjust the CSR's clock-

out time to coincide with the CSR's scheduled end of shift time.

58.     Consequently, Defendant maintains a common plan and policy pursuant to which it fails to pay CSRs for no less than three to four minutes per day of work performed in connection with their end of shift shutdown and log-out activities.

59.     The unpaid off-the-clock work performed subsequent to each shift by Plaintiffs and other CSRs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

**F.      If a CSR is Tardy for Work, Defendant Rounds Their Time to the Next Quarter Hour**

60.     In addition to the above-described pre-, mid-, and post-shift off-the-clock work, Defendant expressly instructed Plaintiffs and all other CSRs that if they are "tardy" for their shift—defined as "logging on the phones more than 3 minutes late for the start of a shift and returning late from project time, training, breaks, meals, etc."—the tardy is "rounded up to the next quarter hour and counted towards accumulated unscheduled hours balance. Example: 7 minutes late will be counted as .25 hours tardy; 16 minutes late will be counted as .50 hours tardy." (***Exhibit 5*** Employee Handbook – October 2013 – Page 31 of 56 – Version 1.4 updated June 2017)

61.     For example, if a CSR logs onto the phones at 8:04 for an 8:00 shift, the CSR will be considered four minutes late and will be counted as .25 hours tardy. (*Id.*) The 15-minute tardy "will be deducted from an employee's applicable and available PTO. If no PTO is available, **time is unpaid**." (***Exhibit 5*** (emphasis added).)

62.     Importantly, CSRs will be "tardy" if they begin the pre-shift start-up/login process at their scheduled start time. As noted above, the pre-shift startup and login process takes approximately 15 minutes per shift. Thus, if a CSR turns on their computer promptly at the start of a scheduled 8:00 shift, they will complete the pre-shift login process and log onto the phones at

approximately 8:15. Pursuant to Defendant's policies and procedures, the CSR will be considered 15 minutes late which will be counted as .50 hours tardy. (*Exhibit 5*) The 30-minute tardy will be deducted from the CSR's PTO; if no PTO is available, the time is unpaid. (*Exhibit 5*.) Thus, in order to avoid being "tardy" for their shifts, CSRs must begin their pre-shift start-up/login activities *at least* 12 minutes before their scheduled shift.

63.     Consequently, Defendant maintains a common plan and policy pursuant to which it penalizes CSRs for being "tardy" by rounding the tardy to the next quarter hour, counting it towards an "accumulated unscheduled hours balance," and deducting the balance from the CSRs' PTO bank. If no PTO is available, Defendants dock the CSRs' pay. This blatantly illegal policy results in CSRs not being paid for all time worked, including overtime.

### G.     Defendant Benefitted from the Uncompensated Off-the-Clock Work

64.     At all relevant times, Defendant directed and directly benefited from the work performed by Plaintiffs and similarly situated employees in connection with the above-described pre-, mid-, and post-shift activities performed by Plaintiffs and other CSRs.

65.     At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of Plaintiffs and other CSRs.

66.     At all relevant times, Defendant was able to track the amount of time Plaintiffs and the other CSRs spent in connection with the pre-, mid-, and post-shift activities. However, Defendant failed to do so and failed to compensate Plaintiffs and other CSRs for the off-the-clock work they performed.

67.     At all relevant times, Plaintiffs and the CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

68.     At all relevant times, Defendant used its attendance and adherence policies against

Plaintiffs and the CSRs in order to pressure them into performing the pre-, mid-, and post-shift off-the-clock work.

69.     Defendant expressly trained and instructed Plaintiffs and its other CSRs to perform the above-described pre-shift activities before clocking into Defendant's timekeeping system and their shift's scheduled start time to ensure they were prepared to take calls (i.e., were "phone ready") at the moment their shifts began.

70.     At all relevant times, Defendant's policies and practices deprived Plaintiffs and the CSRs of wages owed for the pre-, mid-, and post-shift activities they performed. Because Defendant's CSRs typically worked 40 hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

71.     Defendant knew or should have known that the time spent by Plaintiffs and other CSRs in connection with the pre-, mid-, and post-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

72.     Despite knowing Plaintiffs and other CSRs performed work before and after their scheduled shifts and during their meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

73.     Unpaid wages related to the off-the-clock work described herein is owed to Plaintiffs and the CSRs at the FLSA mandated overtime premium of one and one-half their regular hourly rate because Plaintiffs and the CSRs regularly worked in excess of 40 hours in a workweek.

**H.     Defendant Failed to Include Incentive and Shift Differential Pay in its Calculation of CSRs' Overtime Rates**

74.     As non-exempt employees, Plaintiffs and other CSRs were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

75.     Under FLSA, the regular rate is the "keystone" to calculating the overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co*., 325 U.S. 419 (1945). It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. § 778.108.

76.     No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated. 29 C.F.R. § 778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id.*

77.     29 C.F.R. § 548.502 provides that "[e]xtra overtime compensation must be separately computed and paid on payments such as bonuses or shift differentials which are not included in the computation of the established basic rate…."

78.     There is a statutory presumption that remuneration in any form must be included in the regular rate calculation. The burden is on Defendant to establish that any payment should be excluded. *Madison v. Resources for Human Dev. Inc*., 233 F.3d 187 (3rd Cir. 2000). Thus, determining the regular rate starts from the premise that all payments made to Plaintiffs and other CSRs for work performed are included in the base calculation unless specifically excluded by statute.

79.     Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co*., 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is

permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to rate per hour to determine compliance with the statute.

80.     Plaintiffs' and other CSRs' "total remuneration" included not only their hourly pay, but also their incentive pay and shift-differential pay, in weeks in which they received such compensation.

81.     However, Defendant completely failed to incorporate the incentive pay and shift-differential pay paid to Plaintiffs and other CSRs into its regular hourly rate calculations, which caused Plaintiffs and other CSRs to receive an overtime rate in such weeks that was less than one and one-half times their regular rate.

82.     Defendant knew or should have known that it was unlawful to exclude incentive pay and shift differential pay from CSRs' regular hourly rate calculations.

**I.     Exemplary Pay-Periods to Illustrate Overtime Violations**

83.     An example of specific workweeks where Defendant failed to include incentive and shift differential pay in its calculation of CSRs' overtime rates (as mandated by the FLSA) includes the following:

**Pay Period of 09/02/2018 to 09/15/2018**

- Plaintiff Pickett was paid at a rate of $11.25 per hour for her 80 regular hours, $16.875 per hour for 7.17 overtime hours, $0.50 per hour for 3.5 hours in "2nd Shift Diff,  $1.00 per hour for 0.5 hours in "3rd Shift Diff" pay, and $28.67 in "Incentive" pay.

- Defendant used the regular rate of pay of $11.25 per hour to calculate Plaintiff Pickett's overtime rate of $16.875 per hour. This was unlawful because Plaintiff Pickett's regular rate – and thus her overtime rate – failed to account for the incentive and shift differential pay that Plaintiff Pickett received.

(*Exhibit 6*, Pickett Pay Stub.)

**Pay Period of 10/14/2018 to 10/27/2018**

- Plaintiff Fett was paid at a rate of $12.50 per hour for her 80 regular hours, $18.75 per hour for 4.27 overtime hours, $0.50 per hour for 10.3 hours in "2nd Shift Diff, $1.00 per hour for 24.43 hours in "3rd Shift Diff" pay, $1.48 per hour for 0.23 hours in "3rdshiftdiffot" pay, and $200.49 in "Incentive" pay.

- Defendant used the regular rate of pay of $12.50 per hour to calculate Plaintiff Fett's overtime rate of $18.75 per hour. This was unlawful because Plaintiff Fett's regular rate – and thus her overtime rate – failed to account for the incentive and shift differential pay that Plaintiff Fett received.

(*Exhibit 7*, Fett Pay Stub.)

**Pay Period of 04/14/2019 to 04/27/2019**

- Plaintiff Church was paid at a rate of $12.60 per hour for her 72.37 regular hours, $18.90 per hour for 0.9 overtime hours, $0.50 per hour for 19.3 hours in "2nd Shift Diff, $1.00 per hour for 19.35 hours in "3rd Shift Diff" pay, and $1.50 per hour for 0.9 hours in "3rdshiftdiffot" pay.

- Defendant used the regular rate of pay of $12.60 per hour to calculate Plaintiff Church's overtime rate of $18.90 per hour. This was unlawful because Plaintiff Church's regular rate – and thus her overtime rate – failed to account for shift differential pay that Plaintiff Church received.

(*Exhibit 8*, Church Pay Stub.)

J.      **Defendant Failed to Provide its CSRs with Promised Travel Benefits**

84.     As part of Defendant's offer of employment and CSRs' acceptance of such offer, Plaintiffs and all other CSRs were promised certain benefits, including International Airlines Travel Agent Network ("IATAN") travel benefits (up to 30% discounts/savings on select airfares, hotels and more).

85.     At all relevant times, Defendant failed to provide the promised IATAN travel benefits to Plaintiffs and all other CSRs.

86.     On numerous occasions, Plaintiffs contacted (via telephone, email and chat room) Defendant's supervisors, management personnel, and human resources department to inquire about the promised travel benefits. On each such occasion, Defendant's representatives either (a)

failed to respond to their inquiry, or (b) failed to direct them to, or provide them with information sufficient to access their promised benefits.

87.     The IATAN travel benefits were explicitly promised to Plaintiffs and all other CSRs as an incentive to induce them to work for Defendant. Thus, the promised benefits represent valid consideration in exchange for the CSRs' promise to work for Defendant and were part of the overall compensation and benefits package that Defendant offered (and CSRs accepted) as part of the parties' agreement to forge an employer/employee relationship.

88.     Defendant was contractually obligated to provide Plaintiffs and all other CSRs with all of the compensation/benefits that were promised to them (and that the CSRs accepted) as part of the parties' agreement to forge an employer/employee relationship.

89.     To this day, Defendant continues to offer IATAN travel benefits to its prospective CSRs and advertises such benefits on various online CSR job postings.

90.     Defendant breached its contracts with Plaintiffs and all other CSRs by, *inter alia*, failing to provide them with the promised IATAN travel benefits.

## FLSA COLLECTIVE ACTION ALLEGATIONS

91.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All similarly situated current and former hourly brick-and-mortar Customer Service Representatives who worked for Defendant at any time within three years from the date this lawsuit was filed through judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

92.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated CSRs.

93.     Excluded from the proposed FLSA Collective are Defendant's executives,

administrative and professional employees, including computer professionals and outside salespersons.

94.     Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond 40 hours in a workweek.

95.     Defendant assigned and/or was aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

96.     As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

  a.  Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of 40 hours per workweek;

  b.  Willfully failing to record all of the time that its employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendant.

  c.  Willfully failing to calculate CSRs' overtime pay by including incentive pay and shift differential pay in calculating their regular rates of pay.

97.     Defendant is aware or should have been aware that federal law required it to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of 40 per workweek.

98.     Defendant's unlawful conduct has been widespread, repeated, and consistent.

99.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or

are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

100.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal period time, and the amount of post-shift shut-down/log-out time owed to each employee – do not vary substantially among the proposed FLSA Collective members.

101.    Many similarly situated current and former CSRs have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

102.    This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

103.    Those similarly situated employees are known to Defendant, are readily identifiable and can be located through Defendant's records.

104.    Plaintiffs estimate the proposed FLSA Collective, including both current and former employees over the relevant period, will include several hundred, if not thousands, of workers. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

105.    Plaintiffs Pickett and Fett bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of:

> ***All similarly situated current and former hourly brick-and-mortar Customer Service Representatives who worked for Defendant in Indiana at any time within the relevant statutory period through judgment.***

(hereinafter referred to as the "Rule 23 Indiana Class"). Plaintiffs reserve the right to amend the

putative class definition if necessary.

106.    Plaintiff Church brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own

behalf and on behalf of:

> ***All similarly situated current and former hourly brick-and-mortar Customer Service Representatives who worked for Defendant in Kentucky at any time within the relevant statutory period through judgment.***

(hereinafter referred to as the "Rule 23 Kentucky Class"). Plaintiffs reserve the right to amend the

putative class definition if necessary.

107.    The members of the Rule 23 Classes are so numerous that joinder of all Rule 23

Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds,

if not thousands, of Rule 23 Class members. Rule 23 Class members should be easy to identify

from Defendant's computer systems and electronic payroll and personnel records.

108.    There is a well-defined community of interest among Rule 23 Class members and

common questions of law and fact predominate in this action over any questions affecting

individual members of the Rule 23 Class. These common legal and factual questions include, but

are not limited to, the following:

a.    Whether the time Rule 23 Class members spent on pre-shift activities prior to clocking in for each shift is compensable time;

b.    Whether the time Rule 23 Class members spent on post-shift activities subsequent to clocking out for each shift is compensable time;

c.    Whether Rule 23 Class members are owed wages for time spent performing off-the-clock work activities, and if so, the appropriate amount thereof; and

d.    Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract.

109.    Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other

Rule 23 Class members suffered damages as a direct and proximate result of Defendant's common

and systemic payroll policies and practices. Plaintiffs' claims arise from the same policies,

practices, promises and course of conduct as all other Rule 23 Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Class members.

110.     Plaintiffs will fully and adequately protect the interests of the Rule 23 Classes and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Classes.

111.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

112.     This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

113.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

114.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Classes and declaratory relief is appropriate in this case with respect to the Rule 23 Classes as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**(Violation of the FLSA, 29 U.S.C. § 207(a)(1))**
**FAILURE TO PAY OVERTIME WAGES**

115.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

116.     At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

117.     At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

118.     Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

119.     Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

120.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

121.     At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to off-the-clock work, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

122.     The off-the-clock work performed every shift by Plaintiffs and the FLSA Collective is an essential part of their jobs, and these activities and the time associated with these activities are not *de minimis*.

123.     In workweeks where Plaintiffs and other FLSA Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime should have

been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differential and incentive pay where applicable. 29 U.S.C. § 207.

124.    Defendant failed to incorporate the incentive pay and shift-differential pay paid to Plaintiffs and other FLSA Collective members into its regular hourly rate calculations, which caused Plaintiffs and other FLSA Collective members to receive an overtime rate in such weeks that was less than one and one-half times their regular rate.

125.    Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes for its CSRs to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.  Likewise, Defendant knew that it was required to include Plaintiffs' and other FLSA Collective members' incentive pay and shift differential pay into its regular hourly rate calculations, or recklessly discarded its obligation to do so.

126.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Brought by Plaintiffs ANJELICA PICKETT and TAYLOR FETT Individually and as a Class Action Pursuant to Fed. R. Civ. P. 23)**
**(Breach of Indiana Wage Payment Statute, Ind. Code § 22-2-5-1, _et seq._)**
**FAILURE TO PAY STRAIGHT-TIME WAGES**

127.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

128.    Indiana Code § 22-2-5-1 states in relevant part:

Payment shall be made for all wages earned to a date not more than ten (10) business days prior to the date of payment.

Ind. Code § 22-2-5-1(b).

129.    Defendant is an "employer" within the meaning of the Indiana Code.

130.     Plaintiffs Pickett and Fett and members of the Rule 23 Indiana Class are "employees" within the meaning of the Indiana Code.

131.     Defendant agreed to pay to pay Plaintiffs Pickett and Fett and members of the Rule 23 Indiana Class for all hours worked, as evidenced by Defendant paying them an hourly rate of pay, furnishing them paystubs showing their agreed hourly rates, and instructing them to use Defendant's time-keeping system in order to be paid, or not paid, for any time.

132.     Defendant promulgated a formal (but ineffectual) policy of paying Plaintiffs Pickett and Fett and members of the Rule 23 Indiana Class for all hours worked, as evidenced by Defendant paying them an hourly rate of pay, furnishing them paystubs showing their agreed hourly rates, and instructing them to use Defendant's time-keeping system in order to be paid, or not paid, for any time.

133.     Defendant failed to pay Pickett and Fett and members of the Rule 23 Indiana Class for all hours worked, contrary to the foregoing agreement and formal policy.

134.     Plaintiffs Pickett and Fett, individually and on behalf of the Rule 23 Indiana Class, demand judgment against Defendant for total unpaid amounts, liquidated damages, pre-judgment interest, costs, reasonable attorney's fees and such other and further relief as may be just and proper pursuant to Ind. Code § 22-2-5-1.

### COUNT III
**(Brought by Plaintiff MINDY CHURCH Individually and as a Class Action Pursuant to Fed. R. Civ. P. 23)**
**(Violation of KRS 337.285)**
**FAILURE TO PAY OVERTIME WAGES**

135.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

136.     KRS 337.285 provides:

> No employer shall employ any of his employees for a work week longer than forty (40) hours, unless such employee receives compensation for his employment in excess of forty (40) hours in a

work week at a rate of not less than one and one-half (1- ½ ) times
the hourly wage rate at which he is employed.

137.     Plaintiff Church and other members of the Rule 23 Kentucky Class regularly

worked over forty (40) hours a week as required by Defendant.

138.     At all times relevant to this action, Defendant required Plaintiff Church and other

members of the Rule 23 Kentucky Class to perform off-the-clock work, but failed to pay these

employees the federally mandated overtime compensation for the off-the-clock work.

139.     The off-the-clock work performed by Plaintiff Church and other members of the

Rule 23 Kentucky Class is an essential part of their jobs, and these activities and the time associated

with these activities are not *de minimis*.

140.     In workweeks where Plaintiff Church and other members of the Rule 23 Kentucky

Class worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime

should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly

wage, including shift differentials and incentive pay where applicable. 29 U.S.C. § 207.

141.     Defendant failed to incorporate the incentive pay and shift-differential pay paid to

Plaintiff Church and other members of the Rule 23 Kentucky Class into its regular hourly rate

calculations, which caused Plaintiff Church and other members of the Rule 23 Kentucky Class to

receive an overtime rate in such weeks that was less than one and one-half times their regular rate.

142.     Defendant's failure to pay Plaintiff Church and other members of the Rule 23

Kentucky Class proper overtime wages was not done in good faith, or in conformity with or in

reliance on any written administrative regulation, order, ruling, approval, or interpretation by the

Kentucky Labor Cabinet, or any administrative practice or enforcement policy of such

departments.

143.     As a result of Defendant's violations of KRS, Plaintiff Church and other members

of the Rule 23 Kentucky Class are entitled to recover unpaid overtime wages dating five (5) years back, KRS § 413.120(2), plus an additional equal amount in liquidated damages, reasonable attorneys' fees, and costs of this action, pursuant to KRS § 337.385.

**COUNT IV**
**(Brought by Plaintiff MINDY CHURCH Individually and as a Class Action Pursuant to Fed. R. Civ. P. 23)**
**(Violation of KRS 337.020)**
**FAILURE TO PAY STRAIGHT-TIME WAGES**

144.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

145.    KRS 337.020 provides:

> Every employer doing business in this state shall, as often as semimonthly, pay to each of its employees all wages or salary earned to a day not more than eighteen (18) days prior to the date of that payment. Any employee who is absent at the time fixed for payment, or who, for any other reason, is not paid at that time, shall be paid thereafter at any time upon six (6) days' demand. No employer subject to this section shall, by any means, secure exemption from it. Every such employee shall have a right of action against any such employer for the full amount of his wages due on each regular pay day. The provisions of this section do not apply to those individuals defined in KRS 337.010(2)(a)2.

146.    Defendant promulgated a formal (but ineffectual) policy of paying Plaintiff Church and members of the Rule 23 Kentucky Class for all hours worked, as evidenced by Defendant paying them an hourly rate of pay, furnishing them paystubs showing their agreed hourly rates, and instructing them to use Defendant's time-keeping system in order to be paid, or not paid, for any time.

147.    Defendant agreed to pay Plaintiff Church and members of the Rule 23 Kentucky Class for all hours worked, as evidenced by Defendant paying them an hourly rate of pay, furnishing them paystubs showing their agreed hourly rates, and instructing them to use Defendant's time-keeping system in order to be paid, or not paid, for any time.

148.    Defendant failed to pay Plaintiff Church and members of the Rule 23 Kentucky Class for all hours worked, contrary to the foregoing agreement and formal policy.

149.    A five (5) year statute of limitations applies to each breach pursuant to Kentucky Statute §413.120 (1).

150.    As a result of Defendant's violations of KRS, Plaintiff Church and other members of the Rule 23 Kentucky Class are entitled to recover unpaid straight-time wages dating five (5) years back, KRS § 413.120(2), plus an additional equal amount in liquidated damages, reasonable attorneys' fees, and costs of this action, pursuant to KRS § 337.385.

### COUNT V
**(Brought by Plaintiffs ANJELICA PICKETT and TAYLOR FETT Individually and as a Class Action Pursuant to Fed. R. Civ. P. 23)**
**(Breach of Implied Contract Under Indiana Common Law)**
**FAILURE TO PAY STRAIGHT-TIME WAGES**

151.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

152.    Defendant promulgated a formal (but ineffectual) policy of paying Plaintiffs Pickett and Fett and members of the Rule 23 Indiana Class for all hours worked, as evidenced by Defendant paying them an hourly rate of pay, furnishing them paystubs showing their agreed hourly rates, and instructing them to use Defendant's time-keeping system in order to be paid, or not paid, for any time.

153.    Defendant agreed to pay to pay Plaintiffs Pickett and Fett and members of the Rule 23 Indiana Class for all hours worked, as evidenced by Defendant paying them an hourly rate of pay, furnishing them paystubs showing their agreed hourly rates, and instructing them to use Defendant's time-keeping system in order to be paid, or not paid, for any time.

154.    Defendant failed to pay Plaintiffs Pickett and Fett and members of the Rule 23 Indiana Class for all hours worked, contrary to the foregoing agreement and formal policy.

155.    By not paying Plaintiffs Pickett and Fett and members of the Rule 23 Indiana Class

for all hours worked, Defendant systematically breached its contracts with them.

156.    Defendant also breached its contracts with Plaintiffs Picket and Fett and members of the Rule 23 Indiana Class by, *inter alia*, failing to provide them with the promised IATAN travel benefits.

157.    As a direct and proximate result of Defendants' breaches of the contracts alleged herein, Plaintiffs Pickett and Fett and members of the Rule 23 Indiana Class have been damaged, in an amount to be determined at trial.

158.    A six (6) year statute of limitations applies to each breach pursuant to Ind. Code Ann. § 34-11-2-7

159.    Plaintiffs Pickett and Fett demand, individually and on behalf of the Rule 23 Indiana Class, judgment against Defendant for total unpaid amounts, and such other and further relief as may be just and proper.

**COUNT VI**
**(Brought by Plaintiffs ANJELICA PICKETT and TAYLOR FETT Individually and as a Class Action Pursuant to Fed. R. Civ. P. 23)**
**(Unjust Enrichment/Quantum Meruit Under Indiana Common Law)**
**FAILURE TO PAY STRAIGHT-TIME WAGES**

160.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

161.    Plaintiff and members of the Rule 23 Indiana Class provided valuable services to Defendant, which Defendant received.

162.    Even assuming that Plaintiff and members of the Rule 23 Indiana Class did not have an agreement to be paid for all hours worked, Defendant understood or reasonably should have understood that they expected compensation for all hours of work they provided to Defendant.

163.    The circumstances indicate that it would be unjust for Defendant to retain the benefit of all hours of work performed by Plaintiff and members of the Rule 23 Indiana Class without paying them for all such hours.

164.    A six (6) year statute of limitations applies to Plaintiff's and Rule 23 Indiana Class members' claims for unjust enrichment/quantum meruit.

165.    Plaintiff demands judgment against Defendant for total unpaid amounts, and such other and further relief as may be just and proper.

**COUNT VII**
**(Brought by Plaintiff MINDY CHURCH Individually and as a Class Action Pursuant to Fed. R. Civ. P. 23)**
**(Breach of Implied Contract Under Kentucky Common Law)**
**FAILURE TO PAY STRAIGHT-TIME WAGES**

166.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

167.    Defendant promulgated a formal (but ineffectual) policy of paying Plaintiff Church and members of the Rule 23 Kentucky Class for all hours worked, as evidenced by Defendant paying them an hourly rate of pay, furnishing them paystubs showing their agreed hourly rates, and instructing them to use Defendant's time-keeping system in order to be paid, or not paid, for any time.

168.    Defendant agreed to pay Plaintiff Church and members of the Rule 23 Kentucky Class for all hours worked, as evidenced by Defendant paying them an hourly rate of pay, furnishing them paystubs showing their agreed hourly rates, and instructing them to use Defendant's time-keeping system in order to be paid, or not paid, for any time.

169.    Defendant failed to pay Plaintiff Church and members of the Rule 23 Kentucky Class for all hours worked, contrary to the foregoing agreement and formal policy.

170.    By not paying Plaintiff Church and members of the Rule 23 Kentucky Class for all hours worked, Defendant systematically breached its contracts with them.

171.     Defendant also breached its contracts with Plaintiff Church and other members of the Rule 23 Kentucky Class by, *inter alia*, failing to provide them with the promised IATAN travel benefits.

172.     As a direct and proximate result of Defendant's breaches of the contracts alleged herein, Plaintiff Church and members of the Rule 23 Kentucky Class have been damaged, in an amount to be determined at trial.

173.     A five (5) year statute of limitations applies to each breach pursuant to Kentucky Statute §413.120 (1).

174.     Plaintiff Church, individually and on behalf of the Rule 23 Kentucky Class, demands judgment against Defendant for total unpaid amounts, and such other and further relief as may be just and proper.

**COUNT VIII**
**(Brought by Plaintiff MINDY CHURCH  Individually and as a Class Action Pursuant to Fed. R. Civ. P. 23)**
**(Unjust Enrichment/Quantum Meruit Under Kentucky Common Law)**
**FAILURE TO PAY STRAIGHT-TIME WAGES**

175.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

176.     Plaintiff Church and members of the Rule 23 Kentucky Class provided valuable services to Defendant, which Defendant received.

177.     Even assuming that Plaintiff Church and members of the Rule 23 Kentucky Class did not have an agreement to be paid for all hours worked, Defendant understood or reasonably should have understood that they expected compensation for all hours of work they provided to Defendant.

178.     The circumstances indicate that it would be unjust for Defendant to retain the benefit of all hours of work performed by Plaintiff Church and members of the Rule 23 Kentucky Class without paying them for all such hours.

179.    A five (5) year statute of limitations applies to Plaintiff Church's and Rule 23 Kentucky Class members' claims for unjust enrichment/quantum meruit.

180.    Plaintiff Church, individually and on behalf of the Rule 23 Kentucky Class, demands judgment against Defendant for total unpaid amounts, and such other and further relief as may be just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on the behalf of the putative FLSA Collective and Rule 23 Classes, request judgment as follows:

a.    Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims (Counts II - VIII);

c.    Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d.    Designating Plaintiffs as the representative of the FLSA collective action Class and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

e.    Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f.    Declaring Defendant's violation of the FLSA was willful;

g.    Declaring that Defendant willfully violated the Indiana Wage Payment Statute, Ind. Code § 22-2-5-1, et seq.;

h.    Declaring that Defendant willfully violated the Kentucky Wage and Hour Law, KRS Chapter 337;

i.   Declaring Defendant breached its contracts with Plaintiffs and the members of the Rule 23 Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

j.   Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the collective action Class and the Rule 23 Classes the full amount of damages and liquidated damages available by law;

k.   Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

l.   Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

m.   Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Respectfully Submitted,

Dated: October 2, 2019

_____

Jason T. Brown (PA Bar No. 79369)
Nicholas Conlon (will *pro hac vice*)
BROWN, LLC
111 Town Square Place, Suite 400
Jersey City, New Jersey 07310
Phone: (877) 561-0000
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

Jason J. Thompson (will *pro hac vice*)
Rod M. Johnston (will *pro hac vice*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
jthompson@sommerspc.com
rjohnston@sommerspc.com

*Attorneys for Plaintiffs*

33